Good morning, Justices. May it please the Court, my name is Louis Antonacci and I'm the Plaintiff Appellant in this matter. I want to begin by pointing out some striking similarities and differences in the instant case and the proceedings that are at issue in the complaint that is the subject of this appeal. My defamation action against Saif Farshad and Nita Ponder got kicked around Cook County Circuit Court for about 18 months before it was finally dismissed with prejudice. And similarly, despite the fact that I've been licensed in practice law since 2004, I'm licensed and in good standing with the state of Wisconsin, the Commonwealth of Virginia, and the District of Columbia. My Illinois bar application got dragged out for about 18 months before I finally had to withdraw it and move back to DC. By stark contrast, the complaint that is the subject of this appeal was dismissed sua sponte just six days after I filed it before the defendant appellees had even been served with process. The disturbing similarity in all these proceedings, however, is that in all this time the defendants did not answer any of the complaints that I filed against them. Worse yet, Judge Brewer and Cook County Circuit Court quashed every subpoena that I served on the City of Chicago and Tumor Reporting. Similarly, the hearing panel reviewing my bar application quashed every subpoena that I served on both the defendants and the inquiry panel that tried to coerce me into withdrawing my case in the circuit court. As a result, the defendants have not been required to submit a shred, not one shred, of evidence disputing my verified allegations against them or the myriad affidavits and evidence that I filed in support of my claims. I filed my verified complaint in Cook County Circuit Court in 2012. It's now 2016 and after four years of what I will call vitocracy, the defendants have been allowed to conceal evidence, falsify court documents, engage in extortion under the color of official right, and commit innumerable acts of wire and mail fraud, all by employing nothing for the hollow conjecture of their counsel and now co-defendant, Matt Gerringer. What about the issue of diversity of citizenship? The residence of or the citizenship of an LLC depends on the citizenship of its members. Yes, Your Honor, and I'll be pleased once given the opportunity to discover those facts to engage in that limited discovery, but because this complaint was dismissed after just six days, I've not had the opportunity to discover those facts. I believe Shockley v. Jones is the controlling precedent on that issue, this court's precedent, where if the this court ruled that unless the defects in a complaint are clearly incurable, the court should should allow the parties to argue the jurisdictional issues or allow the plaintiff to engage in discovery to discover the facts. Why do you need discovery? Just look these people up on, you know, internet. Well, with all due respect, Your Honor, it's only under Illinois law, which is the controlling law on this on this issue, for determining the citizenship of the members or partners. No, federal law specifies what citizenship needs to be for diversity purposes. It's domicile, and so if you look up, for example, Sayfarth Shaw and you look at their DC office, you can see who the partners are because they list them separately. They list a number of categories, and then just some inquiry based on facts that are in the almost certainly domiciled in the District of Columbia, and if they are, then so are you. Well, Your Honor, with regard to... I mean, we have the one affidavit, of course, which has been added to the record. Yes, and I would submit that that should be on remand. I would like to test those out, that allegations, and I mean, if and if there is, you know, this one partner of Sayfarth Shaw, who is in fact an equity partner and a resident citizen of the District of Columbia, then I would ask that Sayfarth should simply be dismissed as a dispensable party because they're not dispensable, they're not indispensable to these proceedings. Why did you sue them then? Well, I sued them because they are liable for these acts, but I did not realize it, but if there is a defendant or an equity partner who is a citizen of the District of Columbia, they don't need to be a part of these proceedings. But I do, I believe that this issue, this diversity issue, is moot because I have plainly alleged a cognizable claim under the Racketeer Influence and Corrupt Organizations Act. If what is alleged in my complaint is true, and I believe it is, then there are some very serious issues here, and that is, it's certainly enough, there's certainly a plausible claim under RICO, and thus there would be federal questions on the matter of jurisdiction and diversity. Well, of course, the District Court kind of confuses the language a little bit. At one point, the District Court says there's nothing plausible here using the Twombly-Iqbal standard, then at the end of the opinion, the District Court decides to dismiss on subject matter jurisdiction grounds, really for two reasons. One, finding that there's just so little here, it doesn't even reach Bell versus Hood standards, and two, the lack of diversity. And so, in terms of the plausibility, I mean, it is asking somebody to swallow a lot that there is this giant conspiracy involving the state judiciary that goes all the way up to having the Illinois Court of Appeals affirm Judge Brewer's opinion. With all due respect, yeah, with all due respect, Your Honor, I believe that most people in the city of Chicago believe that that is actually true. There's just nothing that can be done about it. That's not evidence. I mean, people believe all sorts of things. Have you ever looked at the NSF website? Of course, Your Honor, but I mean, for the purposes of a 12b6 dismissal, if that's what this court is going to be looking at, then my allegations must be accepted as true. If there's anything that's not true in there under Rule 11, the defendants can move under Rule 11 and try to sanction me. They won't do that because that would require a bona fide factual inquiry in my allegations. That gets to what I was talking about a moment ago. Just because you've said something is a fact, I mean, you know, you could say that we're all sitting in New York City right now, except that we're not. Yeah, and I would deny it, and the defendants will have the opportunity to do that in accordance with the due process. Well, we don't have to let a case go forward with an indictment. Actually, you do. You don't want to put any money on that, do you? Well, I'm sorry. I should say it another way. The jurisprudence of this court and the U.S. Supreme Court under Twombly and Iqbal is that a case shouldn't be dismissed as implausible because it strikes a savvy judge that the facts won't support the allegations. It's that the facts or the allegations are too conclusory. My allegations are not conclusory, Your Honor, and they're based on my real experience here. Now, also ask yourself, you know, what is more important to you, the defendant, or the defendant himself, than the fact that you're going to have to go forward with an indictment? I mean, if you're going to go forward with an indictment, you're going to have to go forward with an indictment. What's the more reasonable inference? That Twombly Reporting would hire a lawyer and fight tooth and nail from producing stenographic notes of a hearing transcript that it falsified? Or just give me the stenographic notes? Same thing with the City of Chicago. Would they fight me tooth and nail for six months and never produce documents after they told me they were going to give them to me? What's the more reasonable inference? That they were lying and they were concealing evidence? Or that they just wanted to waste a lot of time and money hiding something that didn't exist? I think my allegations and my argument are the more reasonable inference. Okay, well if you want to save a little time for rebuttal, you may do so. I just want to make one more point back to diversity, which I was discussing before. The public record point, that's simply not possible because it's only an equity partner under Illinois law. And Illinois law determines who is a citizen for the purposes of a law firm or for the purposes of a law firm. Who is a partner? Illinois law determines who is a partner and what the relationship internally in the firm is. But it's federal law that determines citizenship. So if John Smith is a partner in a firm, an LLC, an LLP, then we need to look under federal law standards to see where John Smith is domiciled. That's all I was saying. Okay, I'm just saying, Your Honor, that I'm not able to know who is an equity partner who shares in those firm's profits and losses based on a website. I need to engage in discovery to get that. And I'll also point out that Neal and Leroy has not even appeared in these proceedings, so we have no way of knowing who their members are. Okay, fine. Mr. Gerringer? Good morning. May it please the court, I'm Matt Gerringer, and I represent Perkins Coie, LLC, Cypher Shaw, LLP, Anita Ponder, and myself. There comes a time when enough is simply enough, and when a litigant, particularly one who is a lawyer and has the time, resources, and apparently the unmitigated rancor, files a facially defective pleading, teeming with allegations that are so preposterous that no federal court should countenance them. But how should we decide that? Why doesn't he at least get his jurisdictional discovery on diversity? Typically that's what we require. And it's just an extra step, you know, who are the partners? It seems very easy for the defendants to produce that information, which is within their control. But with respect to the diversity issue, he filed a pleading that literally had the citizenship of no one. I understand it was a defective pleading, but Judge Schader decided to dismiss the whole thing in six days, so there wasn't much time. Understood that there's no time for discovery, but when you file a case in federal court, you're supposed to plead the citizenship of those members. Of course you are. And do you have any idea how many defective pleadings we see where somebody will be given permission to replead? It's a lot. And what's happened here, Your Honor, is that he was given the opportunity under Rule 59E to cure the defects. He declined that opportunity. Then he filed a motion for leave to amend in this court, which was denied on July 8th. That proposed amendment that he had suggested would not have cured the issue in any event. Again, in Circuit Court Rule 28A1, the docketing statement he was supposed to file, he simply said, I can't file one with the citizenship of these members of the LLC. And the only amendments he's offered so far, which are to drop Cypher Shaw because of our affidavit establishing that certainly they have a D.C. partner, but the only amendment has not dropped Neal and Leroy LLC, nor stated who the members of the LLC are. So he has yet, after repeated opportunities, to do that. And I think a case like America's Best Dins versus Best Dins of America is a perfect example of where the court says the time for opportunity has expired. So suppose we look at his RICO claims, because we don't have to worry about citizenship if the RICO claims are enough to support federal question jurisdiction, because the rest of this, let's just assume for the moment, comes in under 1367. You didn't file a cross-appeal here, and this was quite clearly, if you look at the district court's decision, a decision to dismiss without prejudice for want of subject matter jurisdiction. So we recently held, in the Remigious v. Neiman Marcus case and other cases, that to change a disposition without prejudice to one with prejudice gives you more relief than the district court gave you. Because, of course, with prejudice shuts it off forever, whereas without prejudice, in principle, does not. So what if we were to think that maybe there is a 12B6 problem here? Wouldn't we need to remand? Well, Your Honor, I don't think it meets the first level of review, which is the level of review to say, is this a non-frivolous, non-justiciable claim? You're talking about Bell v. Hood now. Absolutely, Your Honor. And so in this case, because it is both factually so preposterous, and we're talking about, if you read the allegation of this complaint, there are 20 separate individuals named as conspirators in this conspiracy, all of whom are connected by one single thing, his lawsuit. They include everything from a sitting circuit court judge, the sitting circuit court judge's clerk, three members of the Chicago Law Department, including the chief corporation counsel, Steve Patton, three members of the Illinois Supreme Court character and fitness inquiry panel, three members of the Illinois Supreme Court character and fitness hearing panel. I mean, I agree it's a wide brush, but, you know, things have happened in Chicago before, you think back to the 1980s and Operation Greylord, you know, is it that out of the range of possibility? Well, it is, and there's some reasons you can look at that, because if you look at some of the people that are included here, the number of random things that have to have occurred at once, I think, makes this factually preposterous, which is he chose his attorney when he chose to file a lawsuit against Saif Farshad, yet somehow the 25,000 Cook County attorneys, he chose one who happened to be part of this enterprise that was going to conspire against him to sabotage his lawsuit. When the case was randomly assigned in Cook County, somehow it found its way to a judge who apparently, even though she has denied this on the record, knew Anita Ponder, one of the defendants, and then steered everything one direction. The court reporters, he accused the court reporters in that case of falsifying the transcript and of actually deleting things from the memory of the computer and on the tape. These are not court reporters hired by the court or by opposing counsel. These were two court reporters hired by him. These are all actors that have nothing to do with each other, and he chose them, and somehow everyone he chooses ends up to be part of this enterprise. I don't think that meets that level of non-frivolous, non-fictional. It's legally frivolous as well, Your Honor, because if you look at this from the legal standpoint, what's being alleged here is a conspiracy that's all about one thing. It's his dispute and his lawsuit with Sypher Shaw. And if you look at the Gamboa v. Velez case, which went up on a Section 1292 issue, that was a conspiracy among detectives, state prosecutors, et cetera, and it had full allegations of perjured testimony, coercing falsified testimony, and those guys were acquitted. And one of them brought a lawsuit and claimed that it was a RICO violation. And it came up to the court on a certified question as to whether a conspiracy all with one actor and one case involved that went on for several years involved a number of predicate acts. Could that form the basis for a RICO claim? And this court said no. And it said so for a good reason, because this court's jurisprudence tells us that to have the pattern element, you can't have a single victim. You can't just say it's a system-wide corruption the way he has and the way he has alleged here. I think this does not meet the basic level of not plausibility, but beyond that. This is preposterous, and this is delusional. On that basis, I don't think it needs to be remanded. But if you did, there are certainly cases here where cases have been dismissed on lack of subject matter jurisdiction. But they come to this court, and the court determines, well, actually, the dismissal for lack of subject matter jurisdiction was not appropriate. Yes. Unfortunately, this court has not been 100% consistent in whether that is an appropriate thing to do or not, but I'm aware of those cases. Right. And I think in this case, it would be the right case to do it. All right. Thank you. Thank you, Your Honor. Ms. Jansen. May it please the Court, Mr. Antonacci? My name is Kim Jansen. I'm here today on behalf of Ruth Major and the Major Law Firm. I'll be very brief, obviously. We argued in our briefs that even if this court were to reverse on the question of subject matter jurisdiction, and we don't believe you should, but even if you believe that were appropriate, this court has previously held that it would not do so where remand would be futile because the plaintiff cannot state claims. Mr. Antonacci concluded in his reply brief that our arguments on these points did not merit discussion, but I did want to take the opportunity to briefly highlight those arguments and, more importantly, to address any questions this court might have. With respect to the state law claims against Ms. Major, Mr. Antonacci asserted a breach of fiduciary duty and a legal malpractice complaint. Now, the authority holds that if a breach of fiduciary duty claim is duplicative of a legal malpractice claim, then it cannot stand as an independent claim. The legal malpractice claim, Mr. Antonacci has pled himself out of court on this claim because he cannot establish approximate clause where, on the face of the complaint, his claims remain viable after the point at which he discharged Ms. Major. With respect to his common law fraud claims, again, he's pled himself out of court. The representations that he claims are fraudulent, simply are not actionable representations. They're representations of opinion or promises to represent him aggressively. There's clear law that those are not actionable as fraud. In respect to his civil law, civil common law conspiracy claims against all the defendants under state law, again, he's asserted certain purposes of this conspiracy, and on the face of his complaint, all of those purposes have failed. He was not prevented from prosecuting his claims. He was not coerced into withdrawing his suit or settling his claims. He was not coerced into withdrawing any subpoenas. So he suffered no injury from the alleged civil conspiracy, even if he could establish it. So unless this court has any questions. I don't think so. Thank you very much. Thank you very much. Anything further, Mr. Antonacci? Well, what Mr. Garinger has once again done is try to make this a political issue. These are esteemed members of the Illinois Supreme Court's character fitness committee, state court judges, and apparently these people are incapable of doing anything wrong. Well, no, I don't quite read it that way. But what I want you to address for a second is Rule 9b. So you seem to be under a strange view of Rule 9b. It requires significantly more detail in pleadings than Rule 8 does. And a RICO claim is the kind of thing that does trigger the Rule 9b specificity standards. So I think some of the cases you're relying on about the need to assume facts, even very broadly based facts, simply don't apply in a 9b situation. It's harder for a plaintiff when it's a 9b standard than if it's just Rule 8. Of course. I'll point out that that's the opposite of what Judge Shader said, is that my complaint was prologues and too detailed. Prologues and too detailed is a little different from saying, you know, let's put your cards on the table. Let's get the relevant evidence, not just wild accusations. Well, haven't I done that, Your Honor? Point out what is unclear about my complaint, and I'll respond. I mean, your complaint goes on forever, but it doesn't nail down why it is, for example, you think Judge Brewer, you know, was under some conspiracy to appear calm and reasonable. That struck me as wild. I'll point out this, for example. So Judge Brewer stayed out of the bench on December 5th that she did not know a need to ponder. I said, okay, fine. So I petitioned to substitute her, and in accordance with Illinois statutory law, I gave her a draft of an affidavit for her. I said, here's an affidavit that judges are allowed to submit in opposition to a petition to substitute a judge. So just go ahead and sign this affidavit corroborating your in-court statement. She refused to do it. So is it more likely that she was lying? Why does she have to sign an affidavit? She doesn't have to, but she could have. It is the law of the United States that even a judge who appears like they might not be impartial should be disqualified. I mean, that is clearly the case here. I mean, besides my numerous affidavits alleging, and there were other witnesses at some of these hearings where she would just scream at me like a lunatic. I mean, I've never experienced this type of treatment in a court of law in any of the many jurisdictions where I've practiced throughout the course of my career. Okay, you need to wrap up now. Let me ask you a question. Mr. Garinger said that you had sued a court reporter that you'd hired? Yes, that's right, Your Honor. He betrayed you, is that it? I'm sorry? He betrayed you? Well, let me tell you exactly how that went down since you're asking about it. So, because I started to understand the rigged nature of this, of the way Cook County Circuit Court operates and how Mr. Garinger has spent basically his entire career is, you know, these backroom Cook County Circuit Court deals. I started to realize this. So, I hired two court reporters that day. I hired Esquire and then I hired Toomey, the defendants in this case. Esquire that morning told me all of a sudden they didn't have any court reporters available that day. They had no court reporters available. So, I was like, well, that's really strange. Esquire is a really big company. Toomey was a smaller shop who I had known through a previous law firm I worked for, a smaller firm I worked for here. So, Toomey did show up. And you guys know what Cook County Circuit Court's cattle call is like in the morning. There's a bunch of people in there. You know, court reporters are up and down. You know, they do multiple, multiple cases. So, I believe that Esquire had told Garinger that they were going to not have a court reporter there. And then Toomey showed up and they didn't know that he was going to be there. So, they didn't know that that court reporter on the bench was that court reporter at the court reporter stand was my court reporter. And Judge Brewer just let loose on me for the first minute. And I was beside myself. I mean, you can ask my girlfriend. She's here right now. She came that day to see the hearing of the next day. And I told her, excuse me, Your Honor. Why were you suing the court reporter? I don't get it. I wasn't suing the court reporter at that time. What made you sue him? She falsified the hearing transcript of that day. So, she was conspiring with the other defendants? Yes. I'm sure after that hearing, Garinger jumped on her when she came over to me. Okay. I'm just curious what the connection was. Yes. Okay. Thank you for answering the question. And your time is up. So, we will take the case under advisement. Thank you, Your Honor.